1  JASON J. BACH, ESQ.
   Nevada Bar No. 7984
2  MICHAEL L. MASCARELLO
   Nevada Bar No. 10673
3  THE BACH LAW FIRM, LLC
   6053 S. Fort Apache Rd., Suite 130
4  Las Vegas, NV 89148
   Tel: (702) 925-8787
5  Fax: (702) 925-8788
   Attorneys for Plaintiff

6

## UNITED STATES DISTRICT COURT

7

## DISTRICT OF NEVADA

8

9  MICHAEL DRUSSEL, as next friend of his minor )
   child, T.D.                                  )
10                                              )
            Plaintiff,                          )   CASE NO.: 3:12-cv-00551-HDM-WGC
11                                              )
         v.                                     )
12                                              )
   ELKO COUNTY SCHOOL DISTRICT; and             )
13 JACK FRENCH, individually, and as Director of )
   Secondary Education for Elko County School   )
14 District; MIKE ALTENBURG, individually, and  )
   as Principal of Elko High School; and DOES I-XX, )
15 inclusive,                                    )
                                                )
16          Defendants.                          )
   _____)

17

## OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT

18

19       COMES NOW, Plaintiff, MICHAEL DRUSSEL, by and through his counsel of record, Jason

20 J. Bach, Esq. and Michael L. Mascarello, Esq. of THE BACH LAW FIRM, LLC, and hereby

21 opposes Defendants' Motion to Dismiss Plaintiff's Complaint. Plaintiff's opposition is based on the

22 foregoing Points and Authorities, Plaintiff's Complaint, all papers and pleadings on file herein, and

23 any oral argument requested from the Court.

24                    ## MEMORANDUM OF POINTS AND AUTHORITIES

25                                          I.

26                                        *FACTS*

27       On or about May 20, 2012, while on a high school jazz band trip in Boulder, Colorado, T.D.

28 and two other students at Elko High School, C.B. and A.S., were sharing a hotel room. *See*

The Bach Law Firm, LLC
6053 S. Fort Apache Rd. Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787  Fax: (702) 925-8788
www.BachLawFirm.com

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel. (702) 925-8787   Fax. (702) 925-8788
www.BachLawFirm.com

*Complaint, para. 16.* After returning to their hotel room from swimming in the hotel pool, T.D. sat down a chair in the hotel room while A.S. sat in the bed closer to T.D. and C.B. sat in the bed on the opposite side of the room. While sitting in the chair, T.D. took out a pocketknife and began partially opening and closing it. *Id., para. 17.* While partially opening and closing the knife, T.D. asked C.B. if he knew where the power cord was for T.D.'s video game counsel. At no time did T.D. ever threaten to attack C.B. with the knife or make any move toward C.B., who sat approximately ten (10) feet away from T.D. *Id., para. 18.* Later, the boys located the power cord and played video games together until they went to sleep in the hotel room. *Id., para. 19.*

The pocket knife that T.D. had in his possession was not a "switchblade knife" as defined under N.R.S. 202.350 (8)(h) as it was not a spring-blade or snap-blade, it could not be released automatically by the flick of a button, pressure on the handle, or by any other mechanical device or mechanism, and did not have any type of automatic release. *Id., para. 20.*

The pocket knife that T.D. had in his possession was not a "dangerous weapon" as defined under N.R.S. 392.466 (7)(b) as it was not a dirk, dagger, switchblade knife, trefoil, butterfly knife or any other type of knife described in N.R.S. 202.350, or any other object used, or threatened to be used, in such a manner or under such circumstances as to pose a threat of, or cause, bodily injury to a person. *Id., para. 21.*

The following day, it was reported to a chaperone on the trip that T.D. was in possession of a knife. The chaperone then reported this to the band director, but T.D. was allowed to continue performing with the band. *Id., para. 22.*

On May 24, 2012, Defendant, Mike Altenburg, the Principal of Elko High School, became aware of the incident. Altenburg then instructed Norm Mahlberg to conduct an investigation of the incident. *Id., para. 23.* On May 25, 2012, prior to any investigation of the matter, T.D. was immediately suspended from school for ten (10) days. *Id., para. 24.* Prior to T.D.'s ten (10) day suspension, Defendants failed to provide T.D. any notice or explanation of the evidence against him or an opportunity for a hearing or to respond. *Id., para. 25.* Also, prior to T.D.'s ten (10) day suspension, Defendants failed to make any finding that T.D. posed a continuing danger to persons or property, that he posed an ongoing threat of disrupting the academic process, or that he was found

to be in possession of a dangerous weapon. *Id., para. 26.*

On May 30, 2012, Mahlberg submitted an investigation report to Altenburg.  On that day, Altenburg recommended that T.D. be suspended from Elko High School.  Defendant, Jack French, Director of Secondary Education decided to suspend T.D. from school for 180 days. *Id., para. 27.*

On May 30, 2012, Altenburg delivered a letter to T.D.'s parents informing them of the decision to suspend T.D. from school for the May 20, 2012 incident based upon Elko County School District Policy sections JDB (6), (11), (12), and (13) and NRS 392.4655 (1)(a) and NRS 392.466 (2) and (7)(b).  Altenburg also informed T.D.'s parents that they had a right to a hearing before an impartial fact-finding panel to determine if T.D. committed the alleged violation, and if so, based on NRS, what discipline should be recommended by the panel to the superintendent. *Id., para. 28.*

Plaintiff and T.D. timely submitted a request for a due process hearing pursuant the Elko County School District Policy for Student Discipline: Procedure for Administering Discipline: Formal Due Process (JDFD).  A hearing was conducted on June 12, 2012 before a three member fact finding panel. *Id., para. 29.*

According to Elko County School District's policy number JDFD (8)(g), the administration had the burden of proof to show that T.D. actually committed the alleged violations with which he was charged.   Yet, at the hearing the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel and thus failed to even meet the slightest burden of proof. *Id., para. 30.*

According to Elko County School District's policy number JDFD (8)(g), the administration had the burden of proof to show what discipline should be recommended by the panel to the superintendent.  Yet, at the hearing the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel and thus failed to meet this burden of proof. *Id., para. 31.*

According to Elko County School District's policy number JDFD (8)(h) and (i), T.D. had a right to cross examine adverse witnesses and to confront any witnesses against him at the June 12, 2012 hearing.  Yet, the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel thus denying T.D. his rights. *Id., para. 32.*

According to Elko County School District's policy number JDFD (8)(j), the hearing panel findings "shall be based solely on relevant evidence presented at the hearing." The administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel. Nonetheless, the hearing panel found T.D. to be responsible for the alleged violations despite no evidence being presented at the hearing. *Id., para. 33.*

Despite the hearing panel's finding, which had absolutely no evidentiary basis to support any of the allegations made against T.D., Defendants Jack French and Mike Altenburg upheld the hearing panel decision and suspended T.D. from school for 180 days, forever tarnishing the educational transcript and record of T.D., as well as causing severe psychological and physical injuries, all in violation of his U.S. Constitutional Rights, the Elko High School Student Conduct Code, Elko County School District Policy, and NRS 392.467. *Id., para. 43.*

Despite the fact that no evidence was ever presented to support any of the allegations made against T.D., he was not provided notice and a hearing before being suspended for 10 days, and was denied a fair hearing when a "hearing" actually took place, Defendants found T.D. to be responsible for the allegations against him, thus making Defendants' decision arbitrary and capricious. *Id., para. 44.*

As a result, Defendants have wrongly caused T.D. to be sanctioned and for the above-noted sanctions to be wrongly placed on his record, all in violation of his U.S. Constitutional Rights, depriving him of the opportunity to obtain an education and further his career, and inflicting emotional distress and physical injury, all to his damage.

## II.

### *LEGAL ARGUMENT*

**A.    IF THE INSTANT MOTION IS CONVERTED TO A MOTION FOR SUMMARY JUDGMENT, THE MOTION SHOULD BE DENIED PURSUANT TO F.R.C.P. 56(d).**

The instant motion is made pursuant to F.R.C.P. 12(b)(6), yet Defendants have attached numerous exhibits to their motion, including the affidavits of Norman Mahlberg and of Defendants, Mike Altenburg and Jack French. FRCP 12 (d) states "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under FRCP 56. All parties must be given a reasonable

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

opportunity to present all the material that is pertinent to the motion." FRCP 12(d).

Should the Court convert the motion into a summary judgment motion pursuant to F.R.C.P. 56, Plaintiff respectfully requests that he is given a reasonable opportunity to submit affidavits and extraneous proofs to avoid taking Plaintiff by surprise through the conversion of the motion into a motion for summary judgment. FRCP 56(d) states, " If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

As is set forth in the affidavit of Plaintiff's counsel, the instant motion is filed in the very early stages of litigation, thus no discovery has been completed. *See Exhibit #1, Affidavit of Plaintiff's Counsel.* Plaintiff needs to have an opportunity to conduct discovery, including serving written discovery and requests for production of numerous documents, and depositions of each of the Defendants. *Id.* It is impossible for Plaintiff to adequately respond to a motion for summary judgment until said discovery has been completed. For that reason, Plaintiff requests that this Court deny summary judgment pursuant to FRCP 56(d). *Id.*

**B.    DEFENDANTS' MOTION PURSUANT TO FRCP 12(b)(6) SHOULD BE DENIED AS PLAINTIFF HAS ADEQUATELY PLEAD EACH CAUSE OF ACTION**

**1.    Standard of Review Under FRCP 12(b)**

Defendants move pursuant to FRCP 12(b)(6) to dismiss all causes of action in the Complaint, spuriously stating Plaintiff failed to state a claim upon which relief can be granted.

There is a strong presumption against dismissing an action for failure to state a claim. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997)(citation omitted). The Court's review of a 12(b) motion is based on the contents of the Complaint. The Court must accept the allegations as true and liberally construe them in the light most favorable to the Plaintiff. *Abramson v. Brounstein*, 897 F.2d 389, 391 (9th Cir. 1990); *Love v. United States*, 871 F.2d 1488 (9th Cir. 1989); *see Kaltenbach v. Richards*, 464 F.3d 524, 526-27 (5th Cir. 2006); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (U.S. 2007). In reviewing a 12(b)(6) motion, the court can consider the pleadings and any additional evidence made available

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

to the court, such as an affidavit. *See Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir. 1997).

A motion to dismiss under F.R.C.P. 12(b)(6) tests the legal sufficiency of a party's claim for relief. The Rule allows trial courts to dismiss only those lawsuits "that are flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993); *see also Smith v. Frye*, 488 F.3d 263, 274 (4th Cir. 2007), *cert. denied*, 128 S. Ct. 653 (U.S. 2007). Under 12(b)(6), a claim may be dismissed if it asserts a legal theory not cognizable as a matter of law or it fails to allege sufficient facts to support an otherwise cognizable legal claim. *See SmileCare Dental Group v. Delta Dental Plan of California, Inc.*, 88 F.3d 780, 783 (9th Cir. 1996), *cert. denied*, 519 U.S. 1028, 117 S. Ct. 583 (1996). The court must give the plaintiff "the benefit of all reasonable inferences derived from the facts alleged." *Stewart v. National Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) (citation omitted).

A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success, for a complaint "may proceed even if it appears 'that a recovery is very remote and unlikely'" and no claim will be dismissed merely because the trial judge disbelieves the allegations. *See Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (U.S. 2007). A complaint "may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations." *Id.* at 1969 n.8. A complaint does not need detailed factual allegations. *Id.* at 1964. A pleader must merely show that the allegations "possess enough heft" to establish an entitlement to relief. *Id.* at 1966, 929.

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 167 L. Ed. 2d 929 (U.S. 2007), the United States Supreme Court held that pleaders must allege enough facts to raise their claims beyond the level of speculation and must, instead, "nudge[] their claims across the line from conceivable to plausible." *Id.* at 1974, 929. The facts they plead need only be sufficient to give rise to a "reasonably founded hope that the discovery process will reveal relevant evidence" in support of their claims. *Id.* at 1967, 929 (citations omitted). In general, a complaint should simply identify the "circumstances, occurrences, and events" giving rise to the claim. *Id.* at 1965 (*quoting* Wright & Miller, *supra*, § 1202, at 94, 95).

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

Since the United States Supreme Court rendered its decision in *Twombly*, the basic "notice" pleading standard remains the rule in federal courts and *Twombly* leaves the long-standing notice pleading intact. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008); *see also Aktienselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 15 (D.C. Cir. 2008). This pleading standard is not an onerous burden on Plaintiffs.

In *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116 (9th Cir. 2008), the United States Court of Appeals, Ninth Circuit, held that:

> A Rule 12(b)(6) dismissal may be based on either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990). In other words, [Plaintiff's] complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed.R.Civ.P. 8(a)(2). *This is not an onerous burden*. "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, --- U.S. ----, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (internal quotation marks omitted). Still, [Plaintiff's] complaint must, at a minimum, plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). Finally, in reviewing the district court's decision, we view [Plaintiff's] complaint in the light most favorable to him, accepting all well-pleaded factual allegations as true, as well as any reasonable inferences drawn from them. *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir.2003).

*Id.* at 1121 (emphasis added).

In *Aktienselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8 (D.C. Cir. 2008), the United States Court of Appeals, District of Columbia Circuit, held that the United States Supreme Court has indicated quite clearly that it has not ever meant to tighten pleading standards. *Id.* at 16. The *Aktienselskabet* Court opined that the *Twombly* Court denied "apply[ing] any 'heightened' pleading standard," because any heightened standard would have to arise from an amendment of the Federal Rules of Civil Procedure. *Id.* (citations omitted). The Court further pointed out that Rule 8(a), as the *Twombly* Court reminded, contains only "the threshold requirement" that the statement of a claim "show that the pleader is entitled to relief." *Id.* (citation omitted).

The Complaint in the case at bar affirmatively states an actual entitlement to relief by supplying allegations that push the claim above the level of mere speculation. The Complaint is

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada  89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

extremely clear and thus plausibility appears affirmatively on its face.

From reviewing Plaintiff's Complaint, it is incontrovertible that allegations Plaintiff set forth rise to a level of the causes of action pleaded. As will be made clear in the ensuing arguments, all of the causes of action are sufficiently pleaded and Defendants' motion must therefore be denied in its entirety.

**2.      Plaintiff Has Adequately Stated a Monell Claim Pursuant to 42 U.S.C. §1983.**

**a.      Plaintiff Has Complied with FRCP 8(a).**

FRCP 8(a) states, in relevant part: "A pleading which sets forth a claim for relief, whether an original claim, counter-claim, cross-claim, or third-party claim, shall contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief . . ."

Plaintiff's Complaint provides detailed explanations of the allegations being made against Defendant School District, as well as the individual Defendants. The due process allegations, bought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment, detail the lack of notice, procedural defects, and lack of legitimate state interest which constitute a lack of due process.

**b.      Plaintiff Has Properly Alleged a De Facto School District Policy.**

This is a case where Defendants have policies and procedures in place to adequately provide students, such as T.D., procedural and substantive due process, but chose to ignore those policies and procedures and enact their own "de facto policy."

The term "policy" "generally implies a course of action consciously chosen from among various alternatives." *City of Oklahoma v. Tuttle*, 471 U.S. 808, 823, 105 S.Ct. 2427, 2436, 85 L.Ed.2d 791 (1985). *Monell v. Department of Social Services*, 436 U.S. 658 (1978), imposes liability for injuries resulting from such a choice, if a Constitutional deprivation was "visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." *Monell*, 436 U.S. at 690-91, 98 S.Ct. at 2035-36. This is also referred to as a "de facto policy."

As explained in *Oklahoma City v. Tuttle*, once a de facto policy is established, "it requires only one application ... to satisfy fully *Monell's* requirement that the government be held liable only for constitutional violations resulting from the government's official policy." *Id.*, at 822.

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

"[I]f ... officials know or should know of the particular vulnerability, then the Fourteenth Amendment imposes on them an obligation not to act with reckless indifference to that vulnerability." ***Redmen v. County of San Diego***, 942 F.2d 1435 (9th Cir. 1991); *quoting*, ***Colburn v. Upper Darby Township***, 838 F.2d 663, 669 (3rd Cir.1988), cert. denied, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1989).

"A person deprives another 'of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that *causes* the deprivation of which [the plaintiff complains].'" ***Leer v. Murphy***, 844 F.2d 628, 633 (9th Cir.1988); *quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir.1978).

Plaintiff needs not show that individual Defendants and the School Board maintained a policy affirmatively *encouraging* officials, or each other, to violate the Constitutional rights of its students; " . . . . governments may be liable under Section 1983 for constitutional injuries inflicted by their employees if their *failure* adequately to guard against such injuries through training and supervision rises to the level of 'deliberate indifference' to the constitutional rights of citizens who come in contact with those employees. ***Doe By and Through Knackert v. Estes***, 926 F.Supp. 979, 987 (D.Nev. 1996); *citing, City of Canton* at 388.

Plaintiff's Complaint adequately alleges that Defendants' actions were taken pursuant to such a "de facto policy" and the School Board's failure to adequately to guard against such injuries through training and supervision rises to the level of 'deliberate indifference.' Specifically the Complaint states:

38.   The actions of Defendants resulted from, and were taken, pursuant to a *de facto* policy of Defendant Elko County School District, which is implemented by administrators, directors, agents, and other employees of the said Defendants, all acting under the color of law, who chose to violate T.D.'s constitutional rights, without rightful authority of law, and who continue to violate T.D.'s constitutional rights on an on-going basis by preventing him from returning to school.

39.   The existence of the *de facto* policy described above has been known to supervisory and policy making officers and officials of said Defendants for a substantial period of time.

40.   Despite their knowledge of the said illegal policy and practices, supervisory and policy-making officers and officials of the said Defendants have not taken steps to determine the said practices, have not disciplined or otherwise properly supervised the individual employees who engaged in the said

practices, have not effectively trained the Superintendent, Principals,
Assistant Principals, Board members, and other employees with regard to the
proper constitutional and statutory limits on the exercise of their authority,
and have instead sanctioned the policy and the practices described herein.

As such, Plaintiff's Monell claim against Elko County School District is sufficiently plead

and Plaintiff should be allowed to proceed to discovery on this issue.

### 3.    Plaintiff Has Adequately Pled a Due Process Claim Regarding T.D.'s 10 Day Suspension

The United States Supreme Court has established that students have a property interest in

their education. ***Goss v. Lopez***, 419 U.S. 574 (1975).

> [A] student's legitimate entitlement to a public education [is] a
> property interest which is protected by the Due Process Clause and
> which may not be taken away for misconduct without adherence to
> the minimum procedures required by that Clause. *Id.*

In ***Goss***, the Court set aside the summary 10-day suspensions of nine high school students

charged with various acts of disruptive conduct during school hours. *Id.* "At the very minimum,"

the Court held, due process required notice and an informal hearing prior to the students' suspension.

*Id.*, 579 "[D]ue process requires, in connection with a suspension of 10 days or less, that the student

be given oral or written notice of the charges against him and, if he denies them, an explanation of

the evidence the authorities have and an opportunity to present his side of the story." *Id.* Had the

suspension exceeded 10 days the Court might have required "more formal procedures." *Id.*, 584. The

Court concluded that the adequacy of the notice and the nature of the hearing sufficient to satisfy due

process would vary according to an "appropriate accommodation of the competing interests

involved." *Id.*, 579. The ***Goss*** Court determined that high school students facing the deprivation of

a property right by suspension from school must, at a minimum, "be given *some* kind of notice and

afforded *some* kind of hearing." 419 U.S. 579 (emphasis in original).

Plaintiff adequately pled his claim for violation of T.D.'s procedural due process rights as

follows:

48.    This Complaint sets forth a claim for the deprivation of civil rights by Defendants
violating T.D.'s right to a free public education as secured by the Due Process Clause of the
Fourteenth Amendment of the United States Constitution.

49.    The § 1983 claim against said Defendants is based upon the fact that T.D. was
deprived of the due process of law when he was suspended from Elko High School for ten
(10) days without being informed of the evidence against him, and without having a hearing
on the temporary suspension as required by *Goss v. Lopez*, 419 U.S. 565 (1972) and NRS

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax (702) 925-8788
www.BachLawfirm.com

392.467.

25.     Prior to T.D.'s ten (10) day suspension, Defendants failed to provide T.D. any notice or explanation of the evidence against him or an opportunity for a hearing or to respond.

As Defendants have set forth in their motion, *Goss* required the Defendants to have given T.D. an opportunity to characterize his conduct and put it in what he deems the proper context hearing before suspension. ***Board of Curators of University of Missouri v. Horowitz***, 435 U.S. 78, 86 (1978).

However the Court in *Horowitz* stated that "the need for flexibility is well illustrated by the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct. This difference calls for far less stringent procedural requirements in the case of an academic dismissal." ***Id.***

"State and lower federal courts have recognized that there are distinct differences between decisions to suspend or dismiss a student for disciplinary purposes and similar actions taken for academic reasons which may call for hearings in connection with the former but not the latter. Thus, in Barnard v. Inhabitants of Shelburne, 216 Mass. 19, 102 N.E. 1095 (1913), the Supreme Judicial Court of Massachusetts rejected an argument, based on several earlier decisions requiring a hearing in disciplinary contexts, that school officials must also grant a hearing before excluding a student on academic grounds.  According to the court, disciplinary cases have  "no application. . . . Misconduct is a very different matter from failure to attain a standard of excellence in studies. A determination as to the fact involves investigation of a quite different kind. A public hearing may be regarded as helpful to the ascertainment of misconduct and useless or harmful in finding out the truth as to scholarship." Id., at 22-23, 102 N.E., at 1097." ***Horowitz***, 435 U.S. at 87.

This case involves a disciplinary suspension, which requires far more stringent procedures than in the case of an academic dismissal.  The Complaint is clear that Defendants failed to provide T.D. with any of the evidence or statements made against him so that he could address the issue. Even if T.D. was given an opportunity to provide a written statement, there is no evidence that he was provided other witness statements to address them.  Moreover, there is no evidence that T.D. was provided any notice that he could be facing a ten day suspension or 180 day suspension from the school at the time he provided a written statement.  Thus, Plaintiff's allegation that prior to

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada  89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

T.D.'s ten (10) day suspension, Defendants failed to provide T.D. any notice or explanation of the evidence against him or an opportunity for a hearing or to respond is truthful and accurate. Accordingly, Plaintiff's cause of action for procedural due process violation regarding T.D.'s 10 day suspension should not be dismissed.

### 4.   Plaintiff Has Adequately Pled a Due Process Claim Regarding T.D.'s 180 School Day Suspension

Regarding this procedural due process claim, Plaintiff pled as follows:

50.   When a hearing was held on T.D.'s proposed long-term suspension, T.D. was denied the right to due process, because he could not confront witnesses against him, or rebut any evidence against because, Defendants presented no evidence or witnesses at the hearing.

30.   According to Elko County School District's policy number JDFD (8)(g), the administration had the burden of proof to show that T.D. actually committed the alleged violations with which he was charged.  Yet, at the hearing the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel and thus failed to even meet the slightest burden of proof.

31.   According to Elko County School District's policy number JDFD (8)(g), the administration had the burden of proof to show what discipline should be recommended by the panel to the superintendent.  Yet, at the hearing the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel and thus failed to meet this burden of proof.

32.   According to Elko County School District's policy number JDFD (8)(h) and (i), T.D. had a right to cross examine adverse witnesses and to confront any witnesses against him at the June 12, 2012 hearing.  Yet, the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel thus denying T.D. his rights.

33.   According to Elko County School District's policy number JDFD (8)(j), the hearing panel findings "shall be based solely on relevant evidence presented at the hearing."  The administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel.  Nonetheless, the hearing panel found T.D. to be responsible for the alleged violations despite no evidence being presented at the hearing.

34.   Despite the hearing panel's finding, which had absolutely no evidentiary basis to support any of the allegations made against T.D., Defendants Jack French and Mike Altenburg upheld the hearing panel decision and suspended T.D. from school for 180 days, forever tarnishing the educational transcript and record of T.D., as well as causing severe psychological and physical injuries, all in violation of his U.S. Constitutional Rights, the Elko High School Student Conduct Code, Elko County School District Policy, and NRS 392.467.

Defendants rely on the case *Newsome v. Batavia Local School Dist.* 842 F.2d 920 (6th Cir. 1988) in support of their argument that Plaintiff was not entitled to cross examine the student witnesses at his disciplinary hearing. That case states that the veracity of the students' testimony is initially assessed by a school administrator thus cross-examination of a student is duplicative of the

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787 / Fax: (702) 925-8788
www.BachLawFirm.com

evaluation undertaken by the administrator.  *See Id.* at 924.  Defendants' argument has no merit because not only were the students not present at the hearing, the administrators who Defendants claim assessed the veracity of the statements of the student witnesses were not present at T.D.'s hearing either thus denying T.D. the opportunity to cross-examine them as well.  At the hearing, Defendants utterly failed to meet their burden of proof in showing T.D. actually committed the acts with which he was accused because Defendants presented absolutely no evidence.

Moreover, Plaintiff has adequately plead a procedural due process claim as Defendants erroneously relied upon NRS 392.466 in suspending T.D. for 180 days.  As the Complaint sets forth:

> 57.    The action of T.D. was, in fact, not a threat or extortion, nor an attempt to threaten or extort another student as is set forth in NRS 392.4655.
>
> 58.    The action of T.D. did not impair the health, safety or welfare of another student, did not interfere with the maintenance of school discipline, did not warrant the reasonable belief that disruption of school operations would likely result, nor was it a crime under NRS if committed by an adult as is set forth in Elko School Districy Policy number JDB (6), (11), (12) and (13).
>
> 59.    The pocket knife in T.D.'s possession was not a "dangerous weapon" as defined under NRS 392.466 (2) and (7)(b) and NRS 202.350.
>
> 60.    T.D. was suspended from school without committing any violation of school district policy or state law was arbitrary and capricious, all in violation of his substantive due process rights.

Defendants failed to meet their burden in proving that T.D.'s act of opening and closing a pocket knife was an attempt to threaten another student as they presented no evidence of the act. Defendants failed to meet their burden in proving that T.D.'s act impaired the health, safety or welfare of another student, interfered with the maintenance of school discipline, or warranted the reasonable belief that disruption of school operations would likely result, or that it was a crime under NRS if committed by an adult as Defendants presented no evidence of the act.  Defendants failed to meet their burden in proving that the pocket knife T.D. had was a "dangerous weapon" as defined in the NRS because presented no evidence that it was.  In fact, if Defendants had presented the knife at the hearing it would have been clear that the pocket knife Plaintiff possessed was not a dangerous weapon.

NRS 392.466(2) states:

> Except as otherwise provided in this section, any pupil who is found in possession of a firearm or a dangerous weapon while on the premises of any public school, at an activity

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787  Fax: (702) 925-8788
www.Bachlawfirm.com

sponsored by a public school or on any school bus must, for the first occurrence, be expelled from the school for a period of not less than 1 year, although the pupil may be placed in another kind of school for a period not to exceed the period of the expulsion...

NRS 392.466(7)(b) states:

(b) "Dangerous weapon" includes, without limitation, a blackjack, slungshot, billy, sand-club, sandbag, metal knuckles, dirk or dagger, a nunchaku, switchblade knife or trefoil, as defined in NRS 202.350 a butterfly knife or any other knife described in NRS 202.350, or any other object which is used, or threatened to be used, in such a manner and under such circumstances as to pose a threat of, or cause, bodily injury to a person.

NRS 202.350 (h) and (i) state:

(h) "Switchblade knife" means a spring-blade knife, snap-blade knife or any other knife having the appearance of a pocketknife, any blade of which is 2 or more inches long and which can be released automatically by a flick of a button, pressure on the handle or other mechanical device, or is released by any type of mechanism. The term does not include a knife which has a blade that is held in place by a spring if the blade does not have any type of automatic release.

(i) "Trefoil" means an instrument consisting of a metal plate having three or more radiating points with sharp edges, designed in the shape of a star, cross or other geometric figure and used as a weapon for throwing.

As is set forth in the Complaint, the pocket knife in T.D.'s possession did not fit the definition of a dangerous weapon, switchblade knife or trefoil.  The fact that T.D. was suspended based upon these statutes when he did not have a dangerous weapon and Defendants presented no evidence that he did constitutes a violation of T.D.'s procedural due process rights.  Accordingly, Defendants' motion to dismiss Plaintiff's due process claim regarding the 180 day suspension must be denied.

### 5. Plaintiff Has Adequately Pled a Substantive Due Process Claim Regarding T.D.'s 180 School Day Suspension as No Evidence Was Presented that Plaintiff Committed Any Offense

In addition to the procedural protections outlined above, the Due Process Clause of the Fourteenth Amendment provides a guarantee against arbitrary decisions that would impair appellants' constitutionally protected interests. *Dixon*, 294 F.2d at 157.  This guarantee of "substantive due process" protects certain fundamental "substantive" rights we all share.  The Supreme Court has said of substantive due process that, "the Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 U.S. 702, 719 (1997).  It provides "heightened protection against government interference with certain fundamental rights and liberty interests." *Id.* at 720.  As the

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

court stated in *Dixon*, "the governmental power to expel the plaintiffs...is not unlimited and cannot be arbitrarily exercised.  Admittedly, there must be some reasonable and constitutional ground for expulsion or the courts would have a duty to require reinstatement." *Dixon*, 294 F.2d at 157.  Under principles of substantive due process, students cannot be disciplined for constitutionally protected actions, or for actions which the government has no legitimate interest in punishing.

In addition to protecting such fundamental rights as free speech, substantive due process assures that any government action bear, at a minimum, a rational relationship to a legitimate governmental interest.  In *Alabama & Coushatta Tribes v. Big Sandy School District*, 817 F.Supp. 1319 (E.D. Tex. 1993), the federal District Court for the Eastern District of Texas provided two theories upon which a successful substantive due process claim may be made. "If the suspensions were patently unreasonable or disproportionate to the offense, the [students] would be entitled to relief," or, if there was a "substantial departure from academic norms," the student would also be entitled to relief. *Id.* at 1335.

Plaintiff's Complaint states that T.D.'s 180 day suspension was arbitrary and capricious because it could not have been rationally related to the incident because Defendants failed to present any evidence that T.D. committed any act in violation of Nevada law or school district policy.

As the Complaint states:

30.     According to Elko County School District's policy number JDFD (8)(g), the administration had the burden of proof to show that T.D. actually committed the alleged violations with which he was charged.  Yet, at the hearing the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel and thus failed to even meet the slightest burden of proof.

31.     According to Elko County School District's policy number JDFD (8)(g), the administration had the burden of proof to show what discipline should be recommended by the panel to the superintendent.  Yet, at the hearing the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel and thus failed to meet this burden of proof.

32.     According to Elko County School District's policy number JDFD (8)(h) and (i), T.D. had a right to cross examine adverse witnesses and to confront any witnesses against him at the June 12, 2012 hearing.  Yet, the administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel thus denying T.D. his rights.

33.     According to Elko County School District's policy number JDFD (8)(j), the hearing panel findings "shall be based solely on relevant evidence presented at the hearing."  The administration failed to call any witnesses or present any evidence whatsoever to the fact-finding panel.  Nonetheless, the hearing panel found T.D. to be responsible for the alleged violations despite no evidence being presented at the hearing.

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel. (702) 925-8787  Fax (702) 925-8788
www.BachLawFirm.com

34.     Despite the hearing panel's finding, which had absolutely no evidentiary basis to support any of the allegations made against T.D., Defendants Jack French and Mike Altenburg upheld the hearing panel decision and suspended T.D. from school for 180 days, forever tarnishing the educational transcript and record of T.D., as well as causing severe psychological and physical injuries, all in violation of his U.S. Constitutional Rights, the Elko High School Student Conduct Code, Elko County School District Policy, and NRS 392.467.

35.     Despite the fact that no evidence was ever presented to support any of the allegations made against T.D., he was not provided notice and a hearing before being suspended for 10 days, and was denied a fair hearing when a "hearing" actually took place, Defendants found T.D. to be responsible for the allegations against him, thus making Defendants' decision arbitrary and capricious.

Moreover, T.D.'s suspension was based upon T.D. allegedly making threats against a student in violation of Nevada law, NRS 392.4655, when the incident took place in Colorado.  This constitutes a substantive due process violation as is set forth in the Complaint para. 56-57.

Defendants have attempted to construe T.D.'s written statement as an admission that he committed some kind of misconduct which would subject him to discipline from the school.  This is simply not the case.  T.D. never admitted to committing any act that could be construed as misconduct that could subject him to any type of discipline from the school.  T.D. vehemently denies that any misconduct occurred.  Opening and closing a pocket knife while siting on the opposite side of the room of another student cannot in any way be considered a violation of Nevada law or school policy.

It appears that the school acted upon a misconception that T.D. already admitted he committed misconduct.  As a result, the school apparently felt that it did not need to provide T.D. with any of the process that was required under the school district policy in showing T.D. actually committed misconduct.  No evidence was presented that T.D. committed any misconduct and no evidence was ever presented that a 180 day suspension was the correct discipline to be applied in this situation.  The school district policy states that the hearing panel findings "shall be based solely on relevant evidence presented at the hearing" but no evidence was presented.  Thus, the decision of Defendants, French and Altenburg, to uphold the hearing panel decision and suspend T.D. from school for 180 days, is arbitrary and capricious and the decision "shocks the conscience" as it was made in complete disregard for the school policy was made without any evidentiary basis whatsoever.  The actions of Defendants to suspend T.D. is not rationally related to a legitimate

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel. (702) 925-8787  Fax (702) 925-8788
www.BachLawFirm.com

government interest and violated T.D.'s substantive due process rights.

6.     **Plaintiff Has Adequately Stated a Claim for Negligent Hiring, Training and Supervision**

The duty of reasonable care in hiring has been established to ensure employers conduct reasonable background checks on potential employees, to ensure that the employee is fit for the position. *Hall v. SSF, Inc.*, 930 P.2d 94, 98-99 (Nev. 1996); *quoting Burnett v. C.B.A. Sec. Serv., Inc.*, 820 P.2d 750, 752 (Nev. 1991). The employer breaches this duty if it fails to conduct a reasonable background check or if the employer knew, or should have known, of an employee's dangerous propensities. See, *Id*.

Additionally, employers can be held liable for negligently training their employees. *Vinci v. Las Vegas Sands, Inc.*, 984 P.2d 750, 751 (Nev. 1999). Finally, when an employer actively supervises the employees, controls both the details and methods of how the employee performs their work, had the ability to terminate the employee's employment, the employers failure to supervise is subject to a claim of negligence. *Rockwell, Jr. v. Sun Harbor Budget Suites*, 925 P.2d 1175, 1182 (Nev. 1996).

The individual Defendants in this case were employed and put in the positions they are in, despite not having the proper qualifications to understand and safeguard the constitutional and due process rights of students.  Moreover, individual Defendants were not properly trained upon hiring and were not adequately supervised to ensure that the constitutional and due process rights of students were being protected.  Even more egregious, Defendant school district was aware that their employees were violating the constitutional rights of students, and violating the school district policy, but turned a blind eye to this known behavior.  As a result of the negligent hiring, training, and supervision, Plaintiff was subjected to a violation of his constitutional and civil rights.

As is set forth in Plaintiff's Complaint paragraphs 64-67, Plaintiff has complied with the pleading requirements of FRCP 8 and has adequately plead the necessary elements of his negligent hiring training and supervision claim.  Plaintiff should be permitted to proceed to discovery on this cause of action.

7.     **Plaintiff Has Adequately Stated a Claim for Intentional Infliction of Emotional Distress Clearly Setting Forth Defendants' Extreme and Outrageous Conduct**

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

In order to establish a cause of action for intentional infliction of emotional distress, a plaintiff must establish: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff suffered severe or extreme emotional distress, and (3) actual or proximate causation. *Olivero v. Lowe*, 116 Nev. 395, 398,995 P.2d 1023 (2000); *Star v. Rabello*, 97 Nev. 124, 125, 625 P.2d 90 (1981). Extreme and outrageous conduct is that which is "'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 114 Nev. 1, 4, 953 P.2d 24 (1998).

In the case at bar, Plaintiff alleges and has set forth facts showing each element of his claim, including that the Defendants' conduct constitutes extreme and outrageous conduct.  Defendants, French and Altenburg's, decision to uphold the hearing panel decision and suspend T.D. from school for 180 days, is arbitrary and capricious and the decision "shocks the conscience" as it was made in complete disregard for the school policy was made without any evidentiary basis whatsoever and has forever tarnished T.D.'s record.  The decision was contrary to T.D.'s constitutional rights, contrary to the evidence presented because no evidence was presented, and contrary to the legal requirements to impose such a life-altering suspension and in complete disregard for the rights and future of T.D. This conduct is beyond all possible bounds of decency and is utterly intolerable in a civilized society and Defendants' motion to dismiss this claim should be denied.

### 8.    Plaintiff Has Adequately Pled His Causes of Action for Libel and Slander

Plaintiff is aware that Defendants have made statements that T.D. violated school policy and state law.  These statements were made to third parties, including T.D.'s classmates and teachers not involved in T.D.'s alleged misconduct and severely harmed the reputation and character of T.D. Plaintiff has adequately pled this cause of action as follows:

81.    That Defendants made false statements both verbally and written including, but not limited to, statements that T.D. violated school policy and state law.

82.    These statements described above were made to third parties, including Plaintiff's classmates and teachers not involved in T.D.'s alleged misconduct and severely harmed the reputation and character of T.D.

83.    That T.D. has suffered loss of reputation, shame, mortification and hurt feelings as a result of Defendants' deliberate, malicious, intentional, and oppressive conduct.
Plaintiff should be permitted to conduct additional discovery on this issue pursuant to and thus these causes of action should not be denied.

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

These causes of action are not subject to a heightened pleading requirement and Plaintiff has met the pleading requirements. Plaintiff should be permitted to proceed to discovery on these claims and Defendants' motion to dismiss these causes of action should be denied.

## D.   DEFENDANTS' SPECIAL MOTION TO DISMISS UNDER ANTI-SLAPP LAW MUST BE DENIED

### 1.   Nevada's Anti-SLAPP Statute Does Not Apply to this Action

A SLAPP lawsuit is characterized as "'a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights.'" *John v. Douglas County School Dist.*, 219 P.3d 1276, 1280 (Nev., 2009) quoting *Dickens v. Provident Life and Acc. Ins. Co.*, 117 Cal.App.4th 705, 11 Cal.Rptr.3d 877, 882 (2004). The hallmark of a SLAPP lawsuit is that it is filed to obtain a financial advantage over one's adversary by increasing litigation costs until the adversary's case is weakened or abandoned. *USA. v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 970 (9th Cir., 1999). The anti-SLAPP statute only protects citizens who petition the government from civil liability arising from good-faith communications to a government agency. NRS 41.637. Thus, Nevada's anti-SLAPP statute is not an absolute bar against federal substantive claims; rather, it bars claims from persons who seek to abuse other citizens' rights to petition their government, and it allows meritorious claims against citizens who do not petition the government in good faith. *John,* 219 P.3d at 1281.

A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry. First, a defendant "must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir., 2003) quoting *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1129 (N.D.Cal.1999). Second, once the defendant has made a prima facie showing, "the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims." If "the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim," the motion to strike must be denied. *Id.* quoting Cal Civ. Proc.Code § 425.16(b)(1). The Ninth Circuit determines whether the two conditions have been met by using a two step inquiry that involves shifting burdens.

Under the first prong, the Court must determine whether the defendant has made a threshold showing that the challenged cause of action arises from an act in furtherance of the right of petition

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel. (702) 925-8787   Fax. (702) 925-8788
www.BachLawFirm.com

or free speech in connection with a public issue.  Under the second prong, the movant must show that it is unlikely Plaintiff will prevail on his claims.  For each of Plaintiff's claims, Defendants are unable to overcome both the first prong and the second prong.

There are three classes of petitions protected by the anti-SLAPP statute. The first two classes include any communication that is truthful or made without knowledge of falsehood and is made for the following reasons: (1) to procure government or electoral action or (2) to address a matter that reasonably concerns the petitioned governmental entity. NRS 41.637(1)-(2). The third protected class includes any written or oral statement that is truthful or made without knowledge of falsehood and directly addresses an issue before "a legislative, executive or judicial body, or any other official proceeding authorized by law." NRS 41.637(3). *John*, 219 P.3d at 1286.  Even if the actions of Defendants can be construed as communications protected under the anti-SLAPP statute, Defendants made statements that were knowingly false in order to unlawfully punish T.D.

Defendants suspended T.D. from school for 180 days with no evidence that T.D. committed any of the alleged violation.  Yet, Defendants have claimed that the school district met its burden as set forth in the school district policy that T.D. committed misconduct. Defendant failed to present any evidence or allow T.D. to rebut Defendants' allegations that:

(1) the action of T.D. was, in fact, a threat or extortion, or an attempt to threaten or extort another student as is set forth in NRS 392.4655.;

(2) the action of T.D. impaired the health, safety or welfare of another student, interfered with the maintenance of school discipline, warranted the reasonable belief that disruption of school operations would likely result, or that it was a crime under NRS if committed by an adult as is set forth in Elko School Districy Policy number JDB (6), (11), (12) and (13);

(3) the pocket knife in T.D.'s possession was a "dangerous weapon" as defined under NRS 392.466 (2) and (7)(b) and NRS 202.350.

Moreover, Defendants falsely maintain that T.D. had a right to cross examine adverse witnesses and to confront any witnesses against him at the June 2012 hearing when, in fact, Defendants did not produce any witnesses or evidence at the hearing.

These false statements of Defendants were not made in good faith and cannot be protected

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.bachlawfirm.com

under Nevada's anti-SLAPP statute.

### a.   Negligent Hiring, Training and Supervision

Defendants have failed to make the threshold showing that Plaintiff's negligent hiring, training and supervision claim arises from an act of Defendants in furtherance of the right of petition or free speech in connection with a public issue.  Likewise, Defendants have failed to point to any conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Defendants have also failed to show that it is unlikely Plaintiff will prevail on his claim for negligent hiring, training and supervision.  Defendants merely state that Plaintiff has not pointed to any facts in his Complaint that show Defendants negligently hired, trained, or supervised its administrators, agents, and employees.  Plaintiff is not required to do so at the pleading stage of litigation pursuant to FRCP 8 and 12(b) but Plaintiff has done so anyway as is set forth above.

The moving party bears the initial burden of informing the court of the absence of any genuine issue a material fact for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Yet, Defendants point to no facts in their motion that show there are no genuine issues of material fact regarding Plaintiff's negligent hiring training and supervision claim that would shift the burden to Plaintiff.  In addition to the facts Plaintiff has set forth that substantiate this claim and additional facts that can substantiate this claim are peculiarly in the control of the Defendants and have not been discovered at this extremely early stage in the litigation.  FRCP 56(d).  Therefore, Defendants have failed to meet the second prong that Plaintiff is not likely to succeed on his claim and the motion must be denied.

### b.   Plaintiff is Likely to Prevail on His Intentional Infliction of Emotional Distress Claims as He Set Forth Facts Sufficient to Show Extreme and Outrageous Conduct and Severe Emotional Distress

As is set forth above, Defendants completely disregarded T.D.'s constitutional rights and his rights under the school district policy and issued punishment against him without any factual basis and without allowing T.D. to confront any witnesses or evidence against him.

Defendants, French and Altenburg's, decision to uphold the hearing panel decision and suspend T.D. from school for 180 days, is arbitrary and capricious and the decision "shocks the

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787  Fax: (702) 925-8788
www.BachLawFirm.com

conscience" as it was made in complete disregard for the school policy was made without any evidentiary basis whatsoever and has forever tarnished T.D.'s record.  The decision was contrary to T.D.'s constitutional rights, contrary to the evidence presented because no evidence was presented, and contrary to the legal requirements to impose such a life-altering suspension and in complete disregard for the rights and future of T.D.  This conduct is beyond all possible bounds of decency and is utterly intolerable in a civilized society.  Therefore, Plaintiff is likely to prevail on these claims.

### c.    Plaintiff is Likely to Prevail on His Libel and Slander Claims

The moving party bears the initial burden of informing the court of the absence of any genuine issue a material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Yet, Defendants point to no facts in their motion that show there are no genuine issues of material fact regarding Plaintiff's libel and slander claims that would shift the burden to Plaintiff.  Plaintiff believes that additional facts can substantiate these claim but they are peculiarly in the control of the Defendants and have not been discovered at this extremely early stage in the litigation. FRCP 56(d). Therefore, Defendants have failed to meet the second prong that Plaintiff is not likely to succeed on his claim and the motion must be denied.

### E.    THE NOERR-PENNINGTON DOCTRINE DOES NOT IMMUNIZE DEFENDANTS FROM PLAINTIFF'S FEDERAL CLAIMS

Defendants erroneously argue that they are shielded by the *Noerr-Pennington* Doctrine.  The *Noerr-Pennington* doctrine immunizes from antitrust liability those individuals who urge the federal or state government to take actions that may impose restraints on trade.  The doctrine stems from two Supreme Court cases: *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

The *Noerr-Pennington* doctrine does not bar the admission of otherwise relevant evidence. In *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), one of the cases that established the doctrine, the U.S. Supreme Court explicitly stated that evidence regarding activities protected by the *Noerr-Pennington* doctrine could still be admitted "under the established judicial rule of evidence that testimony of prior or subsequent transactions, which for some reason are barred from forming

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada  89148
Tel: (702) 925-8787   Fax (702) 925-8788
www.BachLawFirm.com

the basis for a suit, may nevertheless be introduced if it tends reasonably to show the purpose and character of the particular transactions under scrutiny." *Id.* at 670 n.3. More broadly, evidence of constitutionally protected speech is routinely admissible to show knowledge, motive and intent. *See, e.g., Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993) ("The First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent."); *Dawson v. Delaware* (1992) 503 U.S. 159, 165 ("[T]he Constitution does not erect a per se barrier to the admission of evidence concerning one's beliefs and associations . . . simply because those beliefs and associations are protected by the First Amendment."); *Hrynda v. U.S.* (M.D. Fla. 1996), 933 F.Supp. 1047, 1053 (noting "the abundance of law throughout the country concerning the use of speech as evidence in proving violations of conduct-based laws").

The Supreme Court later expanded on the doctrine in *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508 (1972 ). In *Noerr*, the Court held that "no violation of the [Sherman] Act can be predicated upon mere attempts to influence the passage or enforcement of laws". Similarly, the Court wrote in *Pennington* that "[j]oint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition." Finally, in *California Motor Transport*, the Court added that "the right to petition extends to all departments of the Government [and] [t]he right of access to the courts is indeed but one aspect of the right of petition."

There is an exception to the doctrine for sham proceedings. For example, in *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508 (1972), the Court held that the *Noerr-Pennington* doctrine did *not* apply where defendants had sought to intervene in licensing proceedings for competitors, because the intervention was not based on a good-faith effort to enforce the law, but was solely for the purpose of harassing those competitors and driving up their costs of doing business. The *sine qua non* of a "sham" proceeding is not the purpose to harm a competitor, but rather the absence of any purpose to actually obtain government action. Thus, initiating an administrative proceeding that one actually hopes to win in order to harm one's competitors is within the ambit of the *Noerr-Pennington* doctrine, while initiating a similar proceeding that one does not meaningfully intend to win solely to delay one's business competitors is within the sham exception. In 1993, the Supreme Court rejected a purely subjective definition of what is a "sham" lawsuit and

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

set out a two-part test. *See Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S.Ct. 1920, 1926 (1993). Under the first prong of the test, a lawsuit fits within the "sham" exception to First Amendment immunity if the lawsuit is objectively baseless in that "no reasonable litigant could realistically expect success on the merits." Only if the challenged litigation meets the first prong ("objectively baseless") may a court go on to the next prong, which consists of a determination of whether the litigant's subjective motivation in filing the objectively baseless lawsuit was an attempt to interfere with the business of a competitor.

In assessing whether the Defendants fall under the sham exception to the *Noerr-Pennington* doctrine, the Court must consider the "totality of the [disputed] harassing conduct." *Tizes v. Curcio*, 1995 U.S. Dist. LEXIS 11368, at *15, 1995 WL 476675, at *6 (N.D.Ill. Aug. 9, 1995). "[S]o long as the Complaint alleges that the defendants used the petitioning process primarily, if not exclusively, to harass or to discriminate against the [plaintiffs], the Complaint states a potentially valid claim for relief, the First Amendment and the *Noerr-Pennington* doctrine notwithstanding." *Id.* 1995 U.S. Dist. LEXIS 11368 at *14, at *5.

In the case at bar, Plaintiff has clearly alleged that Defendants used the process to harass and deprive T.D. of his constitutional rights. Defendants suspended T.D. from school for 180 days with no evidence that T.D. committed any of the alleged violation. Yet, Defendants have claimed that the school district met its burden as set forth in the school district policy that T.D. committed misconduct. Defendant failed to present any evidence or allow T.D. to rebut Defendants' allegations that:

(1) the action of T.D. was, in fact, a threat or extortion, or an attempt to threaten or extort another student as is set forth in NRS 392.4655.;

(2) the action of T.D. impaired the health, safety or welfare of another student, interfered with the maintenance of school discipline, warranted the reasonable belief that disruption of school operations would likely result, or that it was a crime under NRS if committed by an adult as is set forth in Elko School Districy Policy number JDB (6), (11), (12) and (13);

(3) the pocket knife in T.D.'s possession was a "dangerous weapon" as defined under NRS 392.466 (2) and (7)(b) and NRS 202.350.

Moreover, Defendants falsely maintain that T.D. had a right to cross examine adverse witnesses and to confront any witnesses against him at the June 2012 hearing when, in fact, Defendants did not produce any witnesses or evidence at the hearing. Therefore, Defendants are not immune under *Noerr-Pennington* due to the sham proceeding and Defendants' motion must be denied.

**F.   IN THE EVENT THAT THIS COURT IS INCLINED TO GRANT ANY PORTION OF DEFENDANTS' MOTION, PLAINTIFF REQUESTS LEAVE TO AMEND HIS COMPLAINT.**

While Fed. R. Civ. P. 15 places leave to amend within the sound discretion of the trial court, the 9th Circuit has stressed that a court must remain guided by "the underlying purpose of Rule 15 . . . to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981); *see also Conley v. Gibson*, 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957).

The standard for granting leave to amend is generous. In *Scott v. Eversole Mortuary*, 522 F.2d 1110, 1116 (9th Cir. 1975) the 9th Circuit reversed the district court's dismissal of plaintiff's count insofar as it denied leave to amend because it could "conceive of facts" that would render plaintiff's claim viable and could "discern from the record no reason why leave to amend should be denied." Similarly, in *Breier v. Northern California Bowling Proprietors' Ass'n*, 316 F.2d 787, 789-90 (9th Cir. 1963) this Court held that leave to amend should be granted if underlying facts provide proper grounds for relief or if the complaint can be saved by amendment. Leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect." *Id.* at 790 (quoting 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)).

The factual history of the events giving rise to this litigation are extensive. In the event that this Court were to find any of Plaintiff's causes of action insufficient, leave to amend is requested. Plaintiff strongly believes that this Court could "conceive of facts" that would render his claims valid, if he were permitted to amend. *Scott v. Eversole Mortuary*, 522 F.2d 1110 (9th Cir. 1975).

### III.

### CONCLUSION

Having established that Plaintiff's Complaint is sufficiently plead, and that each cause of

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787   Fax: (702) 925-8788
www.BachLawFirm.com

action sufficiently states a claim for which relief may be granted, Plaintiff prays that this Court will deny each of Defendants' Motions in their entirety.

DATED this 5th day of April, 2013.

THE BACH LAW FIRM, LLC

By: ___/s/ Michael L. Mascarello___
      JASON J. BACH, ESQ.
      Nevada Bar No. 7984
      MICHAEL L. MASCARELLO, ESQ.
      Nevada Bar No. 10673
      6053 South Fort Apache Rd., Suite 130
      Las Vegas, NV 89148
      Attorneys for Plaintiff

The Bach Law Firm, LLC
6053 S. Fort Apache Rd., Suite 130
Las Vegas, Nevada 89148
Tel: (702) 925-8787 Fax: (702) 925-8788
www.BachLawFirm.com