**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

```
MICHAEL DRUSSEL, as next friend  )    3:12-cv-00551-HDM-WGC
of his minor child, T.D.,        )
                                 )
            Plaintiff,           )    ORDER
                                 )
vs.                              )
                                 )
ELKO COUNTY SCHOOL DISTRICT, JACK)
FRENCH, and MIKE ALTENBURG,      )
                                 )
            Defendants.          )
_____)
```

Before the court is the defendants' motion to dismiss and/or motion for summary judgment (#12). Plaintiff has opposed (#19), and defendants have replied (#24).

Plaintiff Michael Drussel ("plaintiff"), as next friend of his minor son, T.D., filed the complaint in this action on October 10, 2012. The complaint asserts several state and federal causes of action against defendants Elko County School District, the director of secondary education for Elko County School District Jack French ("French"), and the principal of Elko High School Mike Altenburg ("Altenburg") (collectively "defendants") relative to disciplinary action taken by the school district against T.D. in May 2012.

1

:Case 3:12-cv-00551-HDM-VPC   Document 30   Filed 07/02/13   Page 2 of 13

Case 3:12-cv-00551-HDM-VPC   Document 30   Filed 07/02/13   Page 2 of 13

Defendants move to dismiss the complaint on several grounds. Plaintiff's complaint alleges the following relevant facts.

On May 20, 2012, T.D. was attending an Elko High School band trip in Colorado. He was sharing a hotel room with students C.B. and A.S. In the hotel room, T.D. sat on a chair, A.S. sat on the bed closest to T.D., and C.B. sat on the bed across the room, about 10 feet away from T.D. T.D. took out his pocket knife and opened and closed it. While doing so, T.D. asked C.B. if he knew where the power cord for T.D.'s video game console was. The boys later found the cord and played games the rest of the night.

The following day, a chaperone was told that T.D. had a knife. The chaperone reported the information to the band director. T.D. was allowed to continue performing with the band.

On May 24, 2012, Altenburg learned of the incident and instructed the school's vice principal to investigate. The defendants have alleged that C.B. had been "frightened by the exchange." On May 25, 2012, Altenburg suspended T.D. for ten days. Plaintiff alleges T.D. was suspended before any investigation or hearing, and without notice, an explanation of the evidence against him, or an opportunity to respond.

On May 30, 2012, Altenburg received the vice principal's investigation report. That day, Altenburg recommended that T.D. be suspended. French determined that T.D. should be suspended for 180 days. T.D.'s parents were advised of the decision by letter and were advised of their right to a hearing before an impartial fact-finding panel. T.D.'s parents requested a hearing, which was held on June 12, 2012.

Plaintiff alleges that at the June 12, 2012, hearing, the

2

administration failed to call any witnesses or present any evidence. Plaintiff was represented by counsel at the hearing. The panel determined that T.D. had violated both state law and school district policies in connection with the May 20, 2012 incident, and recommended T.D. be suspended for 180 days pursuant to state law. Altenburg and French adopted that recommendation and T.D. was suspended for 180 days. This lawsuit followed.

Plaintiff's complaint asserts the following causes of action: (1) a *Monell*[1] claim based on violations of due process and equal protection; (2) denial of procedural due process; (3) denial of substantive due process; (4) negligent hiring, training, and supervision; (5) intentional infliction of emotional distress; (6) injunctive and declaratory relief; and (7) defamation, libel, and slander.

Defendants move to dismiss plaintiff's federal claims under the Noerr-Pennington doctrine, his state law claims under Nevada's Anti-SLAPP statute, and all claims under Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, the motion will be granted in part and denied in part.

**I. Rule 12(b)(6) – Failure to State a Claim**

Defendants have moved to dismiss all of plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Because defendants filed an answer before filing their motion to dismiss, the motion shall be considered as a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* Fed. R. Civ. P. 12(b) & 12(h)(2).

---

[1] *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1977).

3

Once the pleadings have closed – "but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (internal punctuation omitted). Analysis of a Rule 12(c) motion is "substantially identical" to analysis of a Rule 12(b)(6) motion. *Id.*

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A pleading that offers only labels and conclusions, a formulaic recitation of the elements of a cause of action, or "naked assertions devoid of further factual enhancement" is insufficient. *Iqbal*, 556 U.S. at 678 (internal punctuation omitted). Conclusory assertions are not entitled to a presumption of truth and thus are not considered in determining whether a claim is plausible on its face. *Chavez*, 683 F.3d at 1108.

In ruling on a Rule 12(b)(6) motion to dismiss, a court may, but is not required to, consider documents incorporated by reference without converting the motion into a motion for summary

4

judgment. *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1159 (9th Cir. 2012); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). The "court may consider evidence on which the plaintiff's complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). In addition, the court may consider documents that are not central to the plaintiff's claims if those documents are referenced extensively in the complaint and their authenticity is not questioned. *Ritchie*, 342 F.3d at 908; *see also Ecological Rights Found. v. Pac. Gas & Elec. Co.*, – F.3d –, 2013 WL 1319462, at *6 (9th Cir. Apr. 3, 2013). "[T]he mere mention of the existence of a document is insufficient to incorporate the contents of the document." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

Defendants ask the court to consider the following documents as incorporated by reference: the witness statements of T.D. and C.B., correspondence to T.D.'s parents regarding the suspension, due process hearing, and final decision, and the panel's findings and recommendations. The court finds that while these documents may be admissible evidence in the action to rebut plaintiff's claims, none is central to plaintiff's claims or referred to extensively in the complaint. Accordingly, the request to find these documents incorporated by reference is **DENIED**.

Plaintiff's first claim for relief asserts a municipal liability claim under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). "Plaintiffs who seek to impose

5

liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury. *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (citing *Monell*, 436 U.S. at 691). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* A government's failure to train "certain employees about their legal duty to avoid violating citizens' rights may [also] rise to the level of an official government policy for purposes of § 1983" where such failure amounts to "deliberate indifference." *Id.*

Plaintiff's *Monell* claim is based on both an alleged de facto policy (or custom) and a failure to train or discipline. His complaint, however, contains nothing more than conclusory assertions and a formulaic recitation of the elements of a *Monell* claim. There are no facts alleged to state a claim of either a de facto policy or failure to train amounting to deliberate indifference. Plaintiff does not identify what the alleged de facto policy entailed. Nor does plaintiff allege any facts suggesting there was a training need so obvious that failure to address it amounted to deliberate indifference. Critically, for purposes of both aspects of his *Monell* claim, plaintiff does not allege any other instances of – or a pattern of – constitutional violations to show the existence of a de facto policy or to show that the school district was on notice of a need for training. In fact, plaintiff's opposition is based solely on plaintiff's own experience. The plaintiff cannot "prove the existence of a municipal policy or custom based solely on the occurrence of a

6

1  single incident of purportedly unconstitutional action by a
2  non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d
3  1230, 1233-34 (9th Cir. 1989) (citing City of Oklahoma City v.
4  Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)
5  (plurality opinion)) (internal punctuation omitted).  Further, a
6  "pattern of similar constitutional violations by untrained
7  employees is 'ordinarily necessary' to demonstrate deliberate
8  indifference for purposes of failure to train." *Connick*, 131 S.
9  Ct. at 1360.  In addition, although plaintiff alleges municipal
10 liability based on "equal protection" violations, there are no
11 facts alleged in plaintiff's complaint to plausibly suggest
12 plaintiff's equal protection rights were violated.  The court
13 concludes that plaintiff's first claim for relief fails to state a
14 claim.
15      As to plaintiff's second and third claims for relief –
16 procedural and substantive due process – defendants' argument to
17 dismiss these claims is primarily factual and takes issue with the
18 accuracy or truthfulness of the allegations in the complaint.
19 However, as noted, the documents defendants have proffered are not
20 incorporated by reference and absent conversion of defendant's
21 motion to one for summary judgment, which the court declines to do,
22 they may not be considered.  Therefore, the court finds that
23 plaintiff has sufficiently stated his claims.
24      Plaintiff's fourth claim for relief asserts negligent hiring,
25 training, and supervision.  The complaint contains only vague,
26 conclusory assertions, and alleges no facts to state a claim that
27 is plausible on its face.
28      Plaintiff's fifth claim for relief asserts intentional

infliction of emotional distress.  The elements of an IIED claim are: (1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) the plaintiff suffered severe or extreme emotional distress; and (3) actual or proximate causation.  *Dillard Dep't Stores, Inc. v. Beckwith*, 115 Nev. 372, 989 P.2d 882, 886 (Nev. 1999).  The defendant's actions must "go beyond all possible bounds of decency [and be] atrocious and utterly intolerable."  *Hirschhorn v. Sizzler Rests. Int'l, Inc.*, 913 F. Supp. 1393, 1401 (D. Nev. 1995). Plaintiff's emotional distress claim is based on his assertion that the defendants failed to present sufficient evidence to find him guilty of violating school policy and state law, wrongly found him guilty of such violations, and determined to suspend him from school for 180 days.  As a matter of law, such conduct is not sufficiently extreme or outrageous to state a claim for intentional infliction of emotional distress.

Plaintiff's sixth cause of action for injunctive and declaratory relief does not state a cognizable claim and duplicates the equitable relief sought in plaintiff's prayer.

Plaintiff' seventh cause of action for defamation, libel, and slander is sufficiently plead insofar as it pleads that the defendants told third parties that plaintiff had violated state law and school district policies.

**II. Anti-SLAPP**

The defendants' Anti-SLAPP motion is considered with respect to only plaintiff's claim of defamation, libel, and slander, as the other relevant claims are dismissed by this order.

Nevada's Anti-SLAPP statute protects "well-meaning citizens

8

who petition the government and then find themselves hit with retaliatory suits known as SLAPP suits." *John v. Douglas County Sch. Dist.*, 219 P.3d 1276, 1281 (Nev. 2009) (internal punctuation omitted). A SLAPP suit "is characterized as a meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." *Id.* at 1280 (internal punctuation omitted). Under Nevada law, a defendant who has been sued based on a "good faith communication in furtherance of the right to petition," Nev. Rev. Stat. § 41.650, may file a special motion to dismiss, which the court is to treat as a motion for summary judgment, *id.* § 41.660. A good faith communication in furtherance of the right to petition is defined as any:

> 1. Communication that is aimed at procuring any governmental or electoral action, result or outcome;
>
> 2. Communication of information or a complaint to a Legislator, officer or employee of the Federal Government, this state or a political subdivision of this state, regarding a matter reasonably of concern to the respective governmental entity; or
>
> 3. Written or oral statement made in direct connection with an issue under consideration by a legislative, executive or judicial body, or any other official proceeding authorized by law, which is truthful or is made without knowledge of its falsehood.

*Id.* § 41.637.

A party moving to dismiss under § 41.660 "must first make a threshold showing that the lawsuit is based on 'good faith communications made in furtherance of th right to petition the government." *John*, 219 P.3d at 1282 (internal punctuation omitted). If this showing is made, the burden of production then shifts to the nonmoving party to demonstrate a genuine issue of material fact. *Id.* Summary judgment is appropriate if there is no

9

genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See id.*; Fed. R. Civ. P. 56(a).

"[D]efendants sued in federal courts can bring anti-SLAPP motions to strike state law claims." *Verizon Delaware, Inc. v. Covad Commc'n Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 973 (9th Cir. 1999); *see also Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795 (9th Cir. 2012).  In federal court, a plaintiff is entitled to seek limited discovery to oppose an Anti-SLAPP motion.  *See Metabolife Int'l Corp. v. Wornick*, 264 F.3d 832, 850 (9th Cir. 2001).

Based on the record and the evidence provided by defendants in support of their motion, the court finds that plaintiff is entitled to conduct limited discovery on defendants' special motion to dismiss plaintiff's claim of defamation, libel, and slander.

### III. Noerr-Pennington

"The Noerr-Pennington doctrine protects the First Amendment right of the people to petition the Government for a redress of grievances." *Nunag-Tanedo v. East Baton Rouge Parish Sch. Bd.*, 711 F.3d 1136, 1138-39 (9th Cir. 2013) (internal punctuation omitted). Under the doctrine, "those who petition all departments of the government for redress are generally immune from liability." *Empress LLC v. City & County of San Francisco*, 419 F.3d 1052, 1056 (9th Cir. 2005).  The doctrine applies to the actions of both private citizens and government officials, and includes "petitions directed at . . . the executive, legislative, judicial and administrative agencies." *Manistee Town Center v. City of Glendale*, 227 F.3d 1090, 1092-93 (9th Cir. 2000); *see also Kearney*

*V. Foley & Lardner, LLP*, 590 F.3d 638, 644 (9th Cir. 2009).

Defendants argue that the actions they took in disciplining T.D. are protected by Noerr-Pennington. Plaintiff's federal claims challenge the internal process used and decision to discipline T.D., and not the right to petition. *See J.J. v. Oak Grove Sch. Dist.*, 2011 WL 6329845 (N.D. Cal. 2011) (unpublished disposition in Case 5:08-cv-05376-RMW) (referencing earlier decision, Doc. #183, in which the court denied Noerr-Pennington immunity in a student discipline case on the basis that the plaintiff was challenging the process used to discipline him and the motives behind it and that such did not implicate the right to petition or free speech). Further, several cases have recognized that in order for Noerr-Pennington to apply to the government, the government's activities must be directed at a distinct public entity. *See Schneck v. Saucon Valley Sch. Dist.*, 340 F. Supp. 2d 558, 573 (E.D. Pa. 2004) ("The Third Circuit has squarely held that *Noerr-Pennington* immunity protects the petitioning activity of public entities, at least so long as the protected petitioning activity constitutes the petitioning of a distinct public entity authorized by state law to resolve the issue at stake.") (citing *Herr v. Pequea Twp.*, 274 F.3d 109, 119 n.9 (3d Cir. 2001) and *Mariana v. Fisher*, 338 F.3d 189, 197 (3d Cir. 2003)); *Gaines v. Strayhorn*, 2007 WL 593584, at *8 (W.D. Tex. 2007) (same). *Cf. Empress LLC*, 419 F.2d at 1057 (noting that where government officials conspire with a private party to employ government action as a means of depriving other parties of their federal constitutional or statutory rights, "a remedy lies only against the conspiring government officials, not against the private citizens" because of Noerr-Pennington immunity). Here

11

defendants' conduct was not the type of conduct intended to be protected under Noerr-Pennington.

Accordingly, the defendants' motion to dismiss plaintiff's federal claims on the basis of the Noerr-Pennington doctrine is **DENIED**.

**Conclusion**

In accordance with the foregoing, the defendants' motion to dismiss (#12) is **GRANTED IN PART** and **DENIED IN PART**. Defendants' motion to dismiss plaintiff's federal claims based on the Noerr-Pennington doctrine and to dismiss his procedural and substantive due process claims based on failure to state a claim is **DENIED**. The motion to dismiss plaintiff's first, fourth, fifth and sixth causes of action is **GRANTED**. Plaintiff is granted leave to amend his complaint with respect to his *Monell* claim and his claim of negligent hiring, training, and supervision on or before July 22, 2013. Finally, the court reserves on defendants' special motion to dismiss plaintiff's defamation, libel, and slander claim until the parties conduct limited discovery and file supplemental briefs. The parties shall have up to and including August 1, 2013, in which to conduct limited discovery on the defamation, libel, and slander claim. Plaintiff shall file any supplemental brief on or before August 12, 2013, and defendants shall file any reply on or before August 22, 2013. Should the plaintiff fail to file any supplement by August 12, 2013, the motion to dismiss plaintiff's defamation, libel, and slander claim shall stand submitted.

/

/

/

Except as hereinabove provided, the deadlines set forth in the scheduling order of June 27, 2013, remain in effect.

IT IS SO ORDERED.

DATED: This 2nd day of July, 2013.

*Howard D McKibben*
_____
UNITED STATES DISTRICT JUDGE

13